# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Case No.  24-cv-133

QUALIA LABS, INC.,

                Plaintiff,

     v.

SETTLOR, INC.;
KRISTA MYERS; and
DOES 1 through 100, inclusive,

                Defendants.

---

## COMPLAINT AND JURY DEMAND

---

Plaintiff QUALIA LABS, INC. ("Plaintiff" or "Qualia,") hereby brings this complaint against SETTLOR, INC. ("Settlor") and KRISTA MYERS ("Myers") (collectively "Defendants") as follows:

## NATURE OF THE ACTION

1.      Since its inception in 2015, Qualia has fostered a secure, connected, and automated software ecosystem for managing real estate transactions. Qualia's real estate and mortgage technology makes buying and selling a home a simple, secure, and enjoyable process for all parties involved. Qualia serves title and escrow operators, title insurance underwriters, mortgage lenders, real estate attorneys, brokerages, and other participants to real estate transactions, including real estate agents and buyers and sellers, throughout the United States. Qualia partners with its customers to provide homebuyers and sellers with the best experience possible.  In December 2020, Qualia acquired Adeptive Software, Inc. ("Adeptive"). Adeptive offered a software platform called ResWare for title production. Today Qualia develops and supports two title production software products:  Qualia Core, which is offered as software as a service (SaaS); and Resware, which is an on-premise title production software.

2.      Qualia strongly believes in fair competition.  But this case presents a serious case of unfair and illegal competition by a former leader of the Resware team, Defendant Krista Myers, and the small new startup, Defendant Settlor.

3.      Defendant Myers was employed at Qualia as a Senior Manager-Product until June of 2023 when she resigned to accept a senior executive position with competitor Settlor.  Myers worked on Resware for many years, starting at Adeptive in September 2015. In connection with her job for Qualia, Defendant Myers had access to Qualia's confidential and trade secret

1

information, including but not limited to the plans for scale-up of ResWare, the software itself, key customer contacts, lists of actual and potential customers, specifications of future product features, customer experience and feedback data, research regarding new software upgrades and features, historic and planned customer pricing methodologies, market research and data, product roadmap documentation, and customer facing documentation.

4.      Defendant Settlor is a recent spin-off from Land Title Guarantee Company.  John E. Freyer, Jr., the son of John E. Freyer Senior who founded Land Title Guarantee Company, is the CEO of Settlor and also serves as the President of Land Title Guarantee Company.   On information and belief, Land Title Guarantee Company provided start-up capital to Defendant Settlor, potentially shares IT infrastructure with Defendant Settlor, and the two companies have ongoing business relationships related to Settlor.  Settlor and Land Title Guarantee Company also have the same agent for service of process – the executive assistant to the President of Land Title Guarantee Company (*i.e.*, John E. Freyer, Jr.).   Investigation is ongoing into the amount of governance and oversight Land Title Guarantee Company has over Settlor, and the equity position Land Title Guarantee Company enjoys in Settlor.   However, the two Settlor customer "testimonials" on their website as of the date of this filing are both from Land Title Guarantee Company Executives Craig Rants and Rushelle Hathoot.

5.      Rather than expend the time and resources necessary to fairly compete in the marketplace, Defendants Myers and Settlor misappropriated, and actually used, substantial amounts of the data contained in the Qualia files that Myers secretly stole before resigning from Qualia and accepting an executive position with Settlor, many of which she then uploaded onto Settlor's computer systems, accessed and used, to unfairly compete against Qualia, including but

not limited to helping Settlor to develop and offer a similar service through Settlor that, on information and belief, is built on Qualia's stolen trade secrets and intellectual property. As a former leader of the Resware team, Myers was well aware of the value of the information she took from Qualia.

6.     Defendant Myers (currently a C-suite level executive at Defendant Settlor), and Settlor, took affirmative measures to conceal their actions for many months after Myers' resignation from Qualia. For example, as a product leader at Qualia, Myers was well aware of the value of the information she took from Qualia. Examples of the hundreds of confidential and competitively valuable Qualia files taken by Myers, include files like: (i) "client contact list"; (ii) "User Research - Resware Team: Product" (documenting the results of research of user attitudes, preferences, etc.); (iii) "Enhancement Priorities" (describing features and improvements requested by Resware customers); (iv) "Resware Goals Roadmap" (documenting business and engineering leaders goals for Resware); and (v) "Connect Roadmap 2022+" (documenting goals for a Qualia SaaS product that sits on top of title production software to enhance communication and collaboration between a title and escrow agent and the other key actors in a real estate transaction). Yet upon her exit from Qualia, Myers falsely confirmed to Qualia that she was in compliance with the obligations under her Qualia Employee Proprietary Information and Inventions Agreement ("EPIIA"), attached as **Exhibit 1,** when in reality, she had purposefully and secretly stolen the precise information that would help her new employer, Settlor, unfairly compete.

7.     Similarly, on September 1, 2023, months after her departure, Qualia sent Defendant Myers a letter reminding her of her agreement to keep any confidential information and trade secrets private and to refrain from disclosing that information to Settlor. Rather than disclose her

data theft and illegal use of the Qualia files (which by that time she had uploaded onto Settlor's computer systems and was using), and make efforts to return what she stole, Myers ignored the letter.  A true and correct copy of the September 1, 2023 letter is attached hereto as **Exhibit 2**.

8.      When, by the end of November 2023, Qualia uncovered forensic evidence proving it was the victim of Defendant Myers' Intellectual Property and trade secret theft, Qualia attempted to informally resolve this matter.   On December 1, 2023, Qualia sent Defendant Myers and Defendant Settlor (via its President Freyer, Jr.) a very specific letter that demanded, among other things, immediate and unconditional disclosure and return of Qualia data via forensic procedures, and cautioned Defendants to preserve – and not delete or alter – all evidence including the stolen Qualia files. A true and correct copy of the December 1, 2023 letter is attached hereto as **Exhibit 3**.

9.      Within a few hours of receipt of the Qualia demand and litigation hold letter sent via email on December 1, 2023, and in an attempt to hide their actions, Defendant Myers, a senior Settlor executive, did exactly what the Qualia letter instructed Myers and Settlor not to do – she deleted off of Settlor's systems all of the Qualia data she had uploaded months earlier. This evidence destruction, much of it permanent, was specifically designed to try and permanently destroy harmful evidence, including meta data, that would demonstrate precisely when and how Myers accessed, shared and otherwise disseminated the stolen Qualia files that she had uploaded months earlier to Settlor's systems.

10.     To date, neither Defendant has done what Qualia's December 1, 2023 demand letter requested – transparently reveal what they did, work with Qualia to remediate the situation, and refrain from evidence destruction.

11.     Based on the facts currently known and in connection with its ongoing investigation, Defendants Myers' and Settlor's actions were not inadvertent, but rather intentionally and willfully undertaken as part of a larger plan, set forth in more detail below, to quickly build a competing product by cutting corners and illegally using stolen Qualia data to do it.

12.     Qualia is further informed and believes, and thereupon alleges, that the product Defendant Settlor seeks to illegally build is not a new product, but rather, a reconstituted version of the software that Qualia acquired in December of 2020 when it purchased Adeptive Software ("Adeptive").         https://www.housingwire.com/articles/qualia-hits-unicorn-status-acquires-adeptive-software/.  Adeptive was Defendant Myers' former employer, and it was this acquisition by Qualia that resulted in Myers coming to work for Qualia.

13.     After many months have elapsed and Qualia has undertaken extensive efforts to informally resolve this matter, Qualia can no longer hope that these Defendants will do the right thing.  In fact, all indications are that Myers and Settlor believe they can continue their illicit scheme apace with no ramifications while they have and continue to benefit from their illicit possession and use of Qualia's confidential and trade secret information.

14.     Based on Defendants' trade secret theft, usage, and evidence destruction, and the threat to Qualia's Intellectual Property that Qualia has spent substantial resources acquiring, developing and optimizing, Qualia now has no choice but to seek formal legal redress through this lawsuit.

**THE PARTIES**

15.     Plaintiff Qualia Labs, Inc. is a Delaware corporation with its principal place of business in San Francisco, California.

16.     Defendant Settlor, Inc. is a Colorado corporation with its principal place of business in Denver, Colorado.  Defendant is registered to do business in the State of Colorado and, at all relevant times, conducted business in the State of Colorado by operating offices at 3840 York Street, Suite 200, Denver, Colorado 80205 in Denver County.

17.     Defendant Krista Myers is employed as Settlor's Head of Product at Settlor's corporate headquarters in Colorado. Defendant Myers is not citizen of California.

**JURISDICTION AND VENUE**

18.     This Court has subject matter jurisdiction over the trade secret claims asserted herein under 18 U.S.C. § 1836(c) and 28 U.S.C. §§ 1331, 1367.

19.     This Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332(a)(2) in that there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000.00.

20.     This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over all other claims that do not arise under the Constitution, laws, or treaties of the United States because they involve a common nucleus of operative fact.

21.     Venue is proper pursuant to 28 U.S.C. § 1391(b) because a substantial portion of the events or omissions giving rise to the claims occurred in this judicial district, and the stolen intellectual property that is the subject of this suit, is being utilized in this judicial district.

## FACTUAL ALLEGATIONS

**Qualia's Business**

22.     Qualia's real estate and mortgage technology makes buying and selling a home a simple, secure, and enjoyable process for all parties involved. Qualia serves title and escrow operators, title insurance underwriters, mortgage lenders, real estate attorneys, brokerages, and other participants to real estate transactions, including real estate agents and buyers and sellers, throughout the United States. Qualia partners with its customers to provide homebuyers and sellers with the best experience possible.  Among other things, Qualia develops and supports two title production software products.  Qualia Core, which is offered as software as a service (SaaS). And Resware, which is an on-premise title production software.

23.     The real estate closing software industry is relatively new, with only a small number of companies that operate in it.  Qualia has established itself as a leader in the industry, earning accolades such as the Best Work Management Platform in June of 2022 and landing on lists such as the Next Big Things in Tech, released by Fast Company.  Its success and accolades are due to Qualia's commitment to product quality, growth, execution and expansion to be able to provide a fully integrated real estate closing platform for its customers.

24.     In the nearly ten years Qualia has been operating, it has developed and expanded its unique software platform to offer solutions beyond closings largely by acquiring and developing its own software internally.

25.      In December of 2020, Qualia acquired Adeptive, the developer of ResWare, a title and escrow production software.  This strategic acquisition, and the substantial post-close software

development Qualia has successfully undertaken to the ResWare product it purchased, has allowed Qualia to further empower the industry to deliver an even greater level of service to the homebuyer.

26.    When Qualia acquired Adeptive, among other issues, the ResWare software was not built to scale.  In order for ResWare to be used on the same scale as Qualia's other products, Qualia had to substantially modify the software's service capacity and functionality – and optimize it.  Through substantial investment, time and resources, Qualia successfully turned ResWare (now known as just Resware) into a large-scale accessible title and escrow service on its platform.

**Qualia Hires Krista Myers**

27.    When Qualia acquired Adeptive, it made employment offers to many of Adeptive's employees including Defendant Krista Myers, who Qualia hired as Product Manager in December 2020.

28.    As a condition of her employment with Qualia and her access to Qualia's confidential information necessary to perform her job functions, Defendant Myers was required to sign Qualia's EPIIA, which among other things, prohibited her from using or sharing Qualia's confidential information in unauthorized fashion or for any purpose other than Qualia's benefit. See **Exhibit 1** hereto.

29.    Pursuant to the EPIIA (and her subsequent Separation Agreement), upon her termination, Myers was also required to return all of Qualia's documents and materials, apparatus, equipment and other physical property, or any reproduction of such property.

30.    As Qualia Product Manager, Defendant Myers had access to Qualia's confidential and trade secret information, including but not limited to the plans for scale-up of ResWare, key contacts, actual and potential customers, specifications of future product features, customer

experience and feedback, research regarding new software upgrades and features, historic and planned customer pricing, market research and data, product roadmap documentation, and customer facing documentation.

31.     During her employment with Qualia, Defendant Myers became highly disgruntled with her employment.  She openly disagreed with Qualia's business plans for what was formerly ResWare.

32.     By May 11, 2023, Defendant Myers had secretly interviewed for and accepted a position with Settlor.

33.     Defendant Settlor is a start-up digital real estate platform that offers digital title and escrow solutions which seek to compete with Qualia's products, namely ResWare.

**Krista Myers Takes Qualia's Confidential and Trade Section Information**

34.     Defendant Myers accepted her position at Settlor on or around May 11, 2023, but continued working for Qualia until May 26, 2023.  In the period prior to her separation date, Myers identified and compiled at minimum, 900 files to take with her to her new employer.  Many of these files contained Qualia's confidential and trade secret information, including key contacts, specifications of future product features, market data and research, product roadmap documentation, customer information and facing documentation, pricing data, technical product information, and other confidential and commercially valuable business data.  Myers targeted files containing the specific confidential data she could utilize in her new position, and that Defendant Settlor could profit from as Qualia's competitor.

35.     Examples of the hundreds of confidential and competitively valuable Qualia files taken by Myers, include files like: (i) "client contact list"; (ii) "User Research - Resware Team:

Product" (documenting the results of research of user attitudes, preferences, etc.); (iii) "Enhancement Priorities" (describing features and improvements requested by Resware customers); (iv) "Resware Goals Roadmap" (documenting business and engineering leaders' goals for Resware ); and (v) "Connect Roadmap 2022+" (documenting goals for a Qualia SaaS product that sits on top of title production software to enhance communication and collaboration between a title and escrow agent and the other key actors in a real estate transaction).

36.     On May 19, 2023, Defendant Myers signed the Separation Agreement with Qualia. A true and correct copy of the Separation Agreement is attached hereto as **Exhibit 4.** Pursuant to the Separation Agreement, Myers was required to certify that she had and would continue to comply with her EPIIA, had returned all company data and documents, and that she would maintain the confidentiality of Qualia's valuable competitive information after her employment was terminated:

> **Trade Secrets and Confidential Information/Company Property.** Employee reaffirms and agrees to observe and abide by the terms of any confidentiality and/or inventions assignment agreement (collectively "Confidentiality Agreement"), specifically including any provisions therein regarding nondisclosure of the Company's trade secrets and confidential and proprietary information. Employee's signature below constitutes Employee's certification that Employee **has returned all documents and other items provided to Employee by the Company,** developed or obtained by Employee in connection with Employee's employment with the Company, or otherwise belonging to the Company.

37.     Myers falsely certified that she met these obligations, because, in fact, she had taken hundreds of files. In reality, at the moment she signed her Separation Agreement, she knew she was in possession of substantial quantities of Qualia data that she has taken knowing she was violating Qualia policies (and the law), and which she had stashed on her personal computer media and intended to – and subsequently did – use for Settlor's benefit.

**Krista Myers and Settlor Use Qualia's Confidential and Trade Secret Information For Months And Then Get Caught**

38.     On September 1, 2023, Qualia sent Defendant Myers a letter, copied to Freyer, Jr. at Settlor, reminding her of her agreement to keep any confidential information or trade secrets private and to refrain from disclosing that information to Settlor and disparaging Qualia to its customers and the marketplace.  *See* **Exhibit 2**.

> [W]e would like to take this opportunity to remind you of your continuing obligations as set forth in the employee confidential information agreement which you signed when you first joined Qualia. These obligations include, but are not limited to, the obligation to refrain from any unauthorized use or disclosure of any confidential or proprietary information of Qualia. In addition, these obligations are reinforced by the Separation Agreement you signed with Qualia on May 19, 2023.

> In addition, we are repeating a message we delivered to you before you left Qualia - Qualia intends to support Resware for the long term and has no plans to sunset the product. Accordingly, we respectfully request that you refrain from telling Qualia employees or Qualia customers that Qualia is not committed to supporting Resware for the long term. Please also avoid any conduct that improperly interferes with our economic relationships with Qualia employees and Qualia customers.

Myers – and Freyer – ignored this letter, despite the fact Myers had already uploaded the stolen Qualia data to Settlor's systems and made use of it.  Prior to receiving this letter, and thereafter, Defendants continued to unlawfully possess and use Qualia's trade secret and confidential information and to disparage Qualia to the marketplace.

**Qualia's December 1, 2023 Letter To Defendants – In Response to Which Defendant Myers Immediately Destroys Evidence of Her Usage**

39.     By November 2023, Qualia continued to get reports from that Myers was defaming Qualia to its core customers.

40.     By the end of November, Qualia performed a backup of the Qualia user profile on its systems belonging to Myers while she was a Qualia employee.

41.     The live file backup of Myers computer revealed that while employed by Qualia, she frequently used a personal Google account, krista.m.myers@gmail.com, simultaneously with her corporate email account, krista.myers@qualia.com.  Google allows users to sign into multiple accounts at once and allows users to switch back and forth between them.  The forensic evidence demonstrated that Myers shifted between accounts to access Qualia information and then upload it onto her personal Google account.

42.     As noted, on December 1, 2023, Qualia again reached out to Defendants Myers and Settlor regarding its concerns about its confidential information and what they had learned through forensic review of its systems.  The letter specifically included the following admonition:

> Until further notice, Ms. Myers and Settlor must preserve, and not delete, and retain all evidence relating to Qualia Labs' including, but not limited to, all communications (including mobile messaging apps like Signal and WhatsApp), text messages, documents, tangible things, and electronic data in your possession, custody, or control, or the possession, custody, or control of your agents. For the purposes of this letter, the term "electronic data" includes, but is not limited to, text files (including word processing documents), spread sheets, e-mail files and information concerning e-mail (including logs of e-mail history and usage, header information and "deleted" files), internet history files and preferences, graphical image files (including ".JPG, .GIF, .BMP and TIFF" files), data bases, calendar and scheduling information, computer system activity logs, instant message text and all related information and/or data related, and all file fragments and backup files containing the above electronic data.

43.     Within a few hours of receiving the December 1, 2023 letter, Defendant Myers deleted off of Defendant Settlor's systems the many Qualia files she had uploaded months earlier and repeatedly accessed and used for Settlor's benefit.

44.     It is also clear that Defendant Myers maintains substantial quantities of Qualia data on her personal computer devices, including an Apple computer and iPad.  Qualia is informed and

believes that Defendant Myers' personal devices also contain evidence that since departing Qualia's employ, she accessed and used the data in the stolen files stored on her personal devices.

45.     To date, Defendants have not provided a detailed accounting of the Qualia confidential and trade secret information stolen by Defendant Myers and they have not returned any of it. Nor have they explained the extent to which it was utilized, disseminated and copied over the many months it was on Settlor's computer systems and stashed on Myers' personal devices.

46.     Putting all of this in perspective, Defendant Myers was a disgruntled and sophisticated product leader in Qualia's Resware team.  In the final stages of her employment for Qualia, she sought out a much smaller new startup competitor, procured a C-suite level executive job for herself with the competitor several levels above the Manager-level job she held at Qualia, stole mass amounts of valuable Qualia data that would be competitively valuable to her at her new job, falsely certified upon her exit that she was not in possession of any Qualia data, immediately started her employment with competitor Settlor, uploaded substantial numbers of Qualia files onto Settlor's computer systems and kept a stashed library of additional Qualia files on her personal devices, spent months using the stolen Qualia data to unfairly compete with Qualia while disparaging and defaming Qualia to its customers, ignored Qualia's September 1, 2023 letter expressing concerns about its IP and trade disparagement, and when Qualia discovered her and Settlor's IP theft and offered them a chance to voluntarily rectify their actions by way of the December 1, 2023 letter, immediately deleted what she thought was all evidence of what she had uploaded onto Settlor's systems that she had repeatedly used and accessed for Settlor's benefit. During this entire period, Qualia is informed and believes that Defendant Myers has been working,

in her capacity as a C-suite level executive of Settlor – a tiny but well-funded startup run under the auspices of the current President of Land Title Guarantee Company – to quickly, cheaply and illegally reconstitute for Settlor the product that Qualia paid tens of millions of dollars to purchase from Defendant Myers' prior company, while simultaneously disparaging Qualia to its customers and trying to convince them to sever their ties with Qualia and become Settlor customers.

47.     Judicial intervention is required to hold Defendants Myers and Settlor responsible for their theft and usage of Qualia's documents and critical trade secrets, for their ongoing unfair acts designed to harm Qualia's business efforts, and to prevent Settlor from continuing its IP development and sale of competing products and services through wrongful, improper, and illegal means that has and continues to cause irreparable harm.

**FIRST CAUSE OF ACTION**

**Misappropriation of Trade Secrets Under the Defend Trade Secrets Act ("DTSA")**

**Alleged Against All Defendants**

48.     Qualia hereby realleges and incorporates by reference each and every allegation set forth in paragraphs 1 through 47, inclusive as though fully set forth herein.

49.     Qualia owns, develops, and possesses information, documents, and data containing trade secrets, including, but not limited to, financial, business, and economic information client contact information, pricing data and technical product information as alleged herein.

50.     Qualia has taken reasonable measures to keep such information secret and confidential, including, but not limited to, having employees sign contracts agreeing not to take or misuse its trade secrets and employing computer systems to prevent and detect theft of trade secrets.

51.     This confidential trade secret information derives independent economic value from not being generally known to, and not being readily ascertainable through proper means by, another person who could obtain economic value from the disclosure or use of the information.

52.     Defendants Myers and Settlor misappropriated Qualia's confidential trade secret information in the improper and unlawful manner as alleged herein.

53.     Defendants' wrongful conduct in misappropriating Qualia's trade secret information, unless and until enjoined and restrained by order of this Court, will cause great and irreparable harm to Qualia.  Qualia is threatened with losing its intellectual property as well as current and potential business.  Qualia will continue to suffer irreparable injury that cannot be adequately remedied at law unless Defendants Myers and Settlor are preliminarily permanently enjoined from engaging in any further such acts of misappropriation.

54.     Each of the acts of misappropriation was done willfully and maliciously by Defendants Myers and Settlor with the deliberate intent to injure Qualia's business and improve their own business and for financial gain, thereby entitling Qualia to exemplary damages and/or attorneys' fees to be proven at trial.

## SECOND CAUSE OF ACTION

## Misappropriation of Trade Secrets Under the Colorado Uniform Trade Secrets Act

## ("CUTSA")

## Alleged Against All Defendants

55.     Qualia hereby realleges and incorporates by reference each and every allegation set forth in paragraphs 1 through 47, inclusive as though fully set forth herein.

56.     Qualia owns, develops, and possesses information, documents, and data containing trade secrets, including, but not limited to, financial, business, and economic information, client contact information, pricing data and technical product information as alleged herein.

57.     Qualia has taken reasonable measures to keep such information secret and confidential, including, but not limited to, having employees sign contracts agreeing not to take or misuse their trade secrets and employing computer systems to prevent and detect theft of trade secrets.

58.     This confidential trade secret information derives independent economic value from not being generally known to, and not being readily ascertainable through proper means by, another person who could obtain economic value from the disclosure or use of the information. Accordingly, the above-described information constitutes "trade secrets" under Colorado's Uniform Trade Secrets Act, Colorado Revised Statutes Section 7-74-101 *et. seq*.

59.     Defendant Myers was and continues to be under a duty both to keep Qualia's confidential trade secret information secret, and not to use or disclose such information other than for the benefit of Qualia.  In taking this information from Qualia, Defendant Myers knew, or should have known, that she acquired such information under circumstances giving rise to a breach of a duty to maintain its secrecy or limit its use, and/or derived such information from or through a person who has such a duty and/or through improper means.

60.     Defendant Myers has taken and retained Qualia's trade secret information in unauthorized fashion.  Further, on information and belief, Defendant Myers has used and continues to use this information to benefit herself, her new employer Defendant Settlor, and/or other persons.

61.     Defendant Myers did not obtain the trade secret information described above from generally available information or through her own independent research and efforts.

62.     The actions of Defendants Myers and Settlor constitute willful misappropriation of Qualia's trade secrets under Colorado Revised Statutes Section 7-74-101 *et seq*.

63.     Defendants' wrongful conduct in misappropriating Qualia's trade secret information, unless and until enjoined and restrained by order of this Court, will cause great and irreparable harm to Qualia.  Qualia is threatened with losing its intellectual property as well as current and potential business.  Qualia will continue to suffer irreparable injury that cannot be adequately remedied at law unless Defendants Myers and Settlor are preliminarily and permanently enjoined from engaging in any further acts of misappropriation.

64.     Each of the acts of misappropriation was done willfully and maliciously by Defendants Myers and Settlor with the deliberate intent to injure Qualia's business, to improve their own business, and for financial gain, thereby entitling Qualia to exemplary damages and/or attorneys' fees to be proven at trial pursuant to Colorado Revised Statutes Section 7-74-104.

### THIRD CAUSE OF ACTION

### Breach of Written Contract – EPIIA

### Alleged Against Defendant Myers

65.     Qualia hereby realleges and incorporates by reference each and every allegation set forth in paragraphs 1 through 47, inclusive, as though fully set forth herein.

66.     Pursuant to the terms of the EPIIA, Defendant Myers agreed to "keep in confidence and trust" and not use or disclose to any third party Qualia's trade secrets "during [her] employment with [Qualia] and after its termination."  Under the terms of the EPIIA, Defendant

Myers also agreed to "not remove any [Qualia] Documents and Materials from the business premises of [Qualia] or deliver any [Qualia] Documents and Materials to any person or entity outside [Qualia]."

67.     Defendant Myers has unjustifiably, intentionally and inexcusably breached her obligations under the EPIIA, and under Colorado law, by misappropriating Qualia's confidential information and trade secret information in violation of her agreement with Qualia.

68.     Pursuant to the EPIIA, Defendant Myers was and is obligated to, among other things, not take or misuse Qualia's confidential and trade secret information upon termination from Qualia.  Further, "immediately upon the termination of [her] employment," Defendant Myers was and is obligated to "return all [Qualia] Documents and Materials, apparatus, equipment and other physical property, or any reproduction of such property."

69.     Defendant Myers has further breached the EPIIA by failing to return all Qualia stolen data and documents, and sharing and utilizing confidential information with a third party, Defendant Settlor, a competitor of Qualia.

70.     Qualia performed all obligations required of it under the terms of the EPIIA.

71.     As a proximate result of Defendant Myers' breach of contract, Qualia has suffered, and will continue to suffer, general and special damages in an amount to be proven at trial.  Qualia seeks compensation for all damages and losses proximately caused by these breaches.

72.     Defendant Settlor's misconduct described above is ongoing and Qualia has suffered and will continue to suffer irreparable harm.  Accordingly, Qualia is entitled to preliminary and permanent injunctive relief enjoining Defendants, and individuals and entities acting with them, from engaging in further misconduct set forth above.

### FOURTH CAUSE OF ACTION

### Breach of Contract – Separation Agreement

### Alleged Against Defendant Myers

73.     Qualia hereby realleges and incorporates by reference each and every allegation set forth in paragraphs 1 through 47 inclusive, as though fully set forth herein.

74.     Under the Separation Agreement, Defendant Myers "reaffirm[ed] and agree[d] to observe and abide by the terms" of the EPIIA.  The Separation Agreement specifically incorporates the EPIIA, which requires Defendant Myers to "keep in confidence and trust" and not misuse Qualia's confidential information "during [her] employment with [Qualia] and after its termination."

75.     Under the Separation Agreement, Defendant Myers also certified that she "returned all documents and other items provided to [her] by [Qualia], developed or obtained by [her] in connection with [her] employment with [Qualia], or otherwise belonging to [Qualia]."

76.     Defendant Myers unjustifiably and inexcusably breached her obligations under the Separation Agreement by misappropriating Qualia's confidential and valuable information to share with its competitor, Defendant Settlor.

77.     Qualia has performed all obligations required of it under the terms of the Separation Agreement.

78.     As a proximate result of Defendant Myers' breach of contract, Qualia has suffered, and will continue to suffer, general and special damages in an amount to be proven at trial.  Qualia seeks compensation for all damages and losses proximately caused by these breaches.

## FIFTH CAUSE OF ACTION

### Intentional Interference with Contract

### Alleged Against Defendant Settlor

79.     Qualia hereby realleges and incorporates by reference each and every allegation set forth in paragraphs 1 through 47 inclusive, as though fully set forth herein.

80.     Qualia entered into a valid and enforceable contract with Defendant Myers, relating to its confidential business information.

81.     On information and belief, Defendant Settlor is and at all times has been aware of Qualia's contracts with Defendant Myers, including the EPIIA and the Separation Agreement.

82.     Defendant Settlor's conduct described herein, including but not limited to its failure to take reasonable measures to ensure that Myers is not in possession of confidential and proprietary Qualia information, including but not limited to, client contact information and pricing and business data.

83.     In allowing her misuse for its benefit of Qualia's confidential and trade secret information as wrongfully obtained by Defendant Myers, Settlor has intentionally interfered with the contracts between Qualia and Defendant Myers and/or prevented Defendant Myers' performance under her contracts with Qualia.

84.     Defendant Settlor intended to disrupt Qualia's contractual agreements with Defendant Myers, and knew that such disruption was certain or substantially certain to occur.

85.     The above-described acts were done willfully and maliciously, with the deliberate intent to injure Qualia and, on information and belief, for Defendants' financial gain.

86.     Qualia was harmed by Defendant Settlor's conduct in an amount to be proven at trial, and its conduct was a substantial factor in causing Qualia's harm, including damage to its relationships, goodwill, and reputation.

87.     Defendant Settlor's misconduct described above is ongoing and Qualia has suffered and will continue to suffer irreparable harm.  Accordingly, Qualia is entitled to preliminary and permanent injunctive relief enjoining Defendants, and individuals and entities acting with them, from engaging in further misconduct set forth above.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff QUALIA LABS, INC. prays for relief as follows:

1.     Judgment in Plaintiff's favor against Defendants on all causes of action alleged herein;

2.     For preliminary, and permanent injunctive relief;

3.     For damages in an amount to be proven at trial;

4.     Exemplary and punitive damages for Defendants' willful and malicious acts;

5.     Attorneys' fees and costs incurred by virtue of this action;

6.     Pre-judgment and post-judgment interest at the maximum rate allowed by law; and

7.     For such other and further relief as the Court may deem proper.

## JURY TRIAL DEMANDED

Plaintiff requests trial by jury on all issues so triable.

Dated:  January 16, 2024

By: s/Paul J. Lopach
    Paul J. Lopach
    Timothy M. Reynolds
    Benjamin J. Hogan
    **BRYAN CAVE LEIGHTON PAISNER LLP**
    1700 Lincoln Street, Suite 4100
    Denver, CO 80203-4541
    Telephone:  +1 303 861 7000
    paul.lopach@bclplaw.com
    tim.reynolds@bclplaw.com
    ben.hogan@bclplaw.com

    Bradford K. Newman
    Andrew Yu-Chih
    Emily T. Brait
    Jacqueline M. Gerson
    **BAKER & McKENZIE LLP**
    600 Hansen Way
    Palo Alto, CA 94304-1044
    Telephone:  +1 650 856 2400
    Bradford.Newman@bakermckenzie.com
    Andrew.YuChih@bakermckenzie.com
    Emily.Brait@bakermckenzie.com
    Jackie.Gerson@bakermckenzie.com

    Attorneys for Plaintiff
    QUALIA LABS, INC.