# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Case No. 1:24-cv-00133-GPG-STV

QUALIA LABS, INC.,

                Plaintiff,

    v.

SETTLOR, INC.; KRISTA MYERS;
LAND TITLE GUARANTEE
COMPANY; and DOES 1 through 100,
inclusive,

                Defendants.

---

# FIRST AMENDED COMPLAINT AND JURY DEMAND

---

Plaintiff QUALIA LABS, INC. ("Plaintiff" or "Qualia,") hereby brings this complaint against SETTLOR, INC. ("Settlor"), KRISTA MYERS ("Myers"), and LAND TITLE GUARANTEE COMPANY ("Land Title") (collectively "Defendants") as follows:

## NATURE OF THE ACTION

1.      Since its inception in 2015, Qualia has fostered a secure, connected, and automated software ecosystem for managing real estate transactions. Qualia's real estate and mortgage technology makes buying and selling a home a simple, secure, and enjoyable process for all parties involved.

2.      Qualia serves title and escrow operators, title insurance underwriters, mortgage lenders, real estate attorneys, brokerages, and other participants to real estate transactions, including real estate agents and buyers and sellers, throughout the United States.  Qualia partners with its customers to provide homebuyers and sellers with the best experience possible.

3.      In December 2020, Qualia acquired Adeptive Software, Inc. ("Adeptive"), which offered an on-premises title production software platform called ResWare (now known as "Resware").  Since then, Qualia has spent considerable time and resources in adapting Resware into a scalable software and integrating Resware into Qualia's platform.

4.      Qualia strongly believes in fair competition.  But this case presents a serious instance of unfair and illegal competition by a former leader of the Resware team, Defendant Krista Myers; a small startup, Defendant Settlor; and Settlor's alter ego, Defendant Land Title.

5.      Defendant Myers was employed at Qualia as a Senior Product Manager until May of 2023, when she resigned to accept a senior executive position with competitor Settlor.  Myers worked on Resware for many years, starting at Adeptive in September 2015.

6.      In connection with her job for Qualia, Defendant Myers had access to Qualia's confidential and trade secret information, including but not limited to the plans for the adaptation of Resware into a scalable software and integration of Resware into Qualia's platform, the software itself, key customer contacts, lists of actual and potential customers, specifications of future product features, customer experience and feedback data, research regarding new software upgrades and features, historic and planned customer pricing methodologies, market research and data, product roadmap documentation, and customer facing documentation.

7.      Before resigning from Qualia and accepting an executive position with Settlor, Defendant Myers secretly stole a substantial number of competitively valuable Qualia files, many of which she then uploaded onto Settlor and Land Title's computer systems. Defendants then used those files to unfairly compete against Qualia, including but not limited to helping Settlor and Land Title develop and offer a competing product that, on information and belief, is built on and/or has been optimized from Qualia's stolen trade secrets and intellectual property.

8.      As a former leader of the Resware team, Myers was well aware of the value of the information she took from Qualia. Examples of the confidential and competitively valuable Qualia data taken by Myers include: (i) Qualia's net promotor score survey from thousands of Resware end users on how to optimize the software; (ii) identification of Resware's most profitable integration partners; (iii) specific agreement terms with Resware's integration partners; (iv) annual revenues, business plans, forecasts and strategic action steps for Resware, including enhancement priorities and product roadmaps; (v) planned products and software solutions; (vi) monthly "scorecard" data for Resware; (vii) Myers's notebooks compiled at Qualia containing years' worth of confidential business information; and (viii) hundreds of rate sheets compiled by Qualia through significant time and effort.

9.      Upon her exit from Qualia, Myers falsely confirmed to Qualia that she was in compliance with the obligations under her Qualia Employee Proprietary Information and Inventions Agreement ("EPIIA"), attached as **Exhibit 1,** which required her, upon the conclusion of her employment, to return all "Company Documents and Materials," including all "documents or other media or tangible items that contain or embody Proprietary Information or any other information concerning the business, operations or plans of the Company."  In reality, Myers had purposefully and secretly stolen this precise information, which would help her and her new employer, Settlor, and its alter ego, Land Title, to unfairly compete against Qualia.

10.     Defendants Myers (currently a C-suite level executive at Defendant Settlor), Settlor, and Land Title then took affirmative measures to conceal their actions for many months after Myers's resignation from Qualia.

11.     For instance, on September 1, 2023, months after her departure, Qualia sent Defendant Myers a letter reminding her of her agreement to keep any confidential information and trade secrets private and to refrain from disclosing that information.  Rather than admit her data theft and illegal use of the Qualia files (which by that time she had uploaded onto her own, as well as Settlor and Land Title's, computer systems, and was using), and make efforts to return what she stole, Myers ignored the letter.  A true and correct copy of the September 1, 2023 letter is attached hereto as **Exhibit 2**.

12.     When, by the end of November 2023, Qualia uncovered forensic evidence proving it was the victim of Defendant Myers's theft of trade secrets, confidential information, and other Qualia data, Qualia attempted to informally resolve this matter.  On December 1, 2023, Qualia sent Defendant Myers and Defendants Settlor and Land Title (via Land Title's President and Settlor's co-founder and current President, John Freyer, Jr. ("Freyer")) a very specific letter that

demanded, among other things, immediate and unconditional disclosure and return of Qualia data via forensic procedures, and cautioned Defendants to preserve—and not delete or alter—all evidence including the stolen Qualia files.  A true and correct copy of the December 1, 2023 letter is attached hereto as **Exhibit 3**.

13.     Upon receipt of Qualia's Letter, Freyer instructed Myers not to read the letter.

14.     Nevertheless, within a few hours of receipt of the Qualia demand and litigation hold letter sent via email on December 1, 2023, and in an attempt to hide their actions, Defendant Myers, a senior Settlor executive, did exactly what the Qualia letter instructed Defendants not to do:  she deleted off of her own, and Settlor and Land Title's systems, all of the Qualia data she had uploaded months earlier.  This evidence destruction, much of it permanent, was specifically designed to permanently destroy harmful evidence, including metadata, that would demonstrate precisely when and how Myers accessed, shared and otherwise disseminated the stolen Qualia files that she had uploaded months earlier to Settlor and Land Title's, and her own, systems.

15.     To date, Defendants have not done what Qualia's December 1, 2023 demand letter reasonably requested: transparently reveal what they did, work with Qualia to remediate the situation, and refrain from evidence destruction.  Moreover, as Settlor has admitted in its discovery responses, to date, it has never disciplined Defendant Myers in any way, which is further proof that at all times, she was acting with the knowledge and consent of Defendants Settlor and Land Title.

16.     Based on the facts currently known and in connection with its ongoing investigation, Qualia asserts that Defendants' actions were not inadvertent, but rather intentionally and willfully undertaken as part of a larger plan, set forth in more detail below, to quickly build

and optimize a competing product by cutting corners and illegally using stolen Qualia data, and then to target Qualia customers to switch to that product.

17.      Qualia is further informed and believes, and thereupon alleges, that the product Defendants seek to illegally build and to optimize is not a new product, but rather, a reconstituted version of the software that Qualia acquired in December of 2020 when it purchased Adeptive Software ("Adeptive").[1]

18.      Based on Defendants' trade secret theft, usage, and evidence destruction, and the threat to Qualia's intellectual property that Qualia has spent substantial resources acquiring, developing and optimizing, Qualia now has no choice but to seek formal legal redress through this lawsuit.

## THE PARTIES

19.      Plaintiff Qualia Labs, Inc. is a Delaware corporation with its principal place of business in San Francisco, California.

20.      Defendant Settlor, Inc. purports to be a Colorado corporation with its principal place of business at 3840 York Street, Suite 200, Denver, Colorado 80205 in Denver County.  As alleged herein, Defendant Settlor is, in reality, nothing more than the alter-ego and an instrumentality of Defendant Land Title.

21.      Defendant Krista Myers is employed as Settlor's Head of Product at Settlor's corporate headquarters in Colorado.  Upon information and belief, Defendant Myers is a citizen of Indiana.

22.      Defendant Land Title Guarantee Company is a Colorado corporation with its principal place of business at 3033 East First Avenue, Suite 600, Denver Colorado 80206 in

---

[1] https://www.housingwire.com/articles/qualia-hits-unicorn-status-acquires-adeptive-software/

Denver County.  As alleged herein, Defendant Land Title is, in reality, the alter-ego of Defendant Settlor.

## LAND TITLE AND SETTLOR ARE ALTER EGOS

23.    Although Land Title purported to "found" and spin-off Settlor and its nascent software product, the reality is much different.  Land Title and Settlor have at all times been, and remain, alter egos of each other.  As specifically alleged herein, Settlor is completely dependent upon the resources of Land Title, is run and managed by Land Title, and is functionally one and the same as Land Title.

24.    Settlor's discovery responses confirm that Settlor and Land Title share and comingle the following functional resources: Desktop and IT Support; Talent Acquisition / Human Resources; Payroll; Financial Accounting; Marketing; and Communications.  In other words, Settlor's operations are run by Land Title employees, who are paid by Land Title, physically work at Land Title's offices, and are directed and controlled by Land Title's senior-most executive.  This alter-ego relationship was the reason why Myers's "Settlor" job offer was sent to her on Land Title letterhead, and by a "full time" employee of by both Land Title and Settlor.  Myers was to report directly to this Land Title/Settlor employee, who worked fully on-site (*i.e.* was physically present and maintained an office) at Land Title during her employment at Land Title/Settlor.

25.    This sharing of officers, employees and resources amounts to Land Title comingling and diverting its corporate assets to Settlor.  Without relying on this commingling of Land Title's functional resources, operations and corporate assets, Settlor lacks the proper separate capitalization, employees, management and corporate assets to independently survive as a stand-alone entity.  This failure of Land Title and Settlor to maintain an arms-length relationship, and

Settlor's inability to operate as an independent entity with its own corporate assets, is also believed to result in substantial commingling of funds and other assets as between the alter-egos.

26.    Settlor and Land Title are both operated and controlled by the same individual—Freyer—who serves as Land Title's President and Settlor's co-founder and current President. Freyer is believed to execute many of his duties as Settlor's President from his Land Title office, during working hours when he purports to be running Land Title, using Land Title servers and emails, and using Land Title employees to work on Settlor's technical and business matters. Qualia believes that his salary to run Settlor is functionally paid by Land Title.

27.    Settlor's other co-founder and head of Applications, Mike Patterson, has worked for Land Title for over 20 years and, upon information and belief, remains Land Title's Director of Systems Development. Patterson, like Freyer, conducts Settlor business and exercises control over Settlor from his Land Title office and using Land Title resources.

28.    Qualia is informed and believes, and thereupon alleges, that Settlor was undercapitalized from its inception, and remains so.  While Qualia believes that Freyer—along with his "friends and family"—was the primary source of capitalization for Settlor, such capitalization was not enough to establish Settlor as a stand-alone entity.  Land Title and Settlor have refused, improperly, to respond to discovery seeking to obtain specifics about Land Title's equity interest and capitalization of Settlor, but on information and belief, Qualia believes that Land Title has an equity or equivalent interest in Settlor.

29.    For example, Land Title became Settlor's first—and, until Settlor hired Myers and utilized the stolen Qualia data, only—significant "customer."  In addition to providing all of the joint corporate infrastructure, corporate oversight, and governance of Settlor as alleged above, Qualia is further informed and believes, and thereupon alleges, that Land Title's "customer

relationship" with Settlor, both in the timing and level of revenue provided versus the actual capabilities of Settlor's product, is nothing more than a conduit for Land Title to divert its corporate assets to Settlor in order to "shadow-capitalize" Settlor in a manner that does not involve further investment by Freyer.

30.    Settlor, as Land Title's alter ego, also disregards legal formalities.  Thus, for example, in addition to "sharing" functional operations with Land Title, Settlor's registered agent of service of process is Freyer's administrative assistant at Land Title, and Settlor lists its registered agent at her Land Title business address.

## JURISDICTION AND VENUE

31.    This Court has subject matter jurisdiction over the trade secret claims asserted herein under 18 U.S.C. § 1836(c) and 28 U.S.C. §§ 1331, 1367.

32.    This Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332(a)(2) in that there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000.00.

33.    This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over all other claims that do not arise under the Constitution, laws, or treaties of the United States because they involve a common nucleus of operative fact.

34.    Venue is proper pursuant to 28 U.S.C. § 1391(b) because a substantial portion of the events or omissions giving rise to the claims occurred in this judicial district, and the stolen intellectual property that is the subject of this suit, is being utilized in this judicial district.

## FACTUAL ALLEGATIONS

**Qualia's Business**

35.     Qualia's real estate and mortgage technology makes buying and selling a home a simple, secure, and enjoyable process for all parties involved.  Qualia serves title and escrow operators, title insurance underwriters, mortgage lenders, real estate attorneys, brokerages, and other participants to real estate transactions, including real estate agents and buyers and sellers, throughout the United States.  Qualia partners with its customers to provide homebuyers and sellers with the best experience possible.  Among other things, Qualia develops and supports two title production software products: Qualia Core, which is offered as software as a service (SaaS); and Resware, which is an on-premise title production software.

36.     The real estate closing software industry is relatively new, with only a small number of companies that operate in it.  Qualia has established itself as a leader in the industry, earning accolades such as the Best Work Management Platform in June of 2022 and landing on lists such as the Next Big Things in Tech, released by Fast Company.  Its success and accolades are due to Qualia's commitment to product quality, growth, execution, and expansion to be able to provide a fully integrated real estate closing platform for its customers.

37.     In the nearly ten years Qualia has been operating, it has developed and expanded its unique software platform to offer solutions beyond closings largely by acquiring and developing its own software internally.

38.      In December 2020, to complement its core real estate software offerings, Qualia acquired Adeptive Software, Inc. ("Adeptive"), the creator of Resware.  Like Qualia's core product, Resware is a software platform that helps escrow, settlement, and real estate professionals simplify the homebuying process.

39.    Unlike Qualia's core product, Resware is an on-premise software platform, meaning the customer hosts Resware on their own servers.  Resware was designed to be highly customizable, allowing customers including large, sophisticated title agencies, to configure complex workflows and integrate with many partners.

40.    Qualia purchased Adeptive with the goal of maintaining the benefits Resware offered while adapting Resware's design to make it scalable and sustainable, focusing on improvements that benefit all customers.

41.    Over the past four years, Qualia has invested significant resources to adapt Resware into a scalable software, while continuing to provide the support and features Resware customers were accustomed to under Adeptive's ownership.

42.    Through its substantial investment, time and resources, Qualia successfully turned Resware into a large-scale accessible title and escrow service on its platform.

**Qualia Hires Krista Myers**

43.    When Qualia acquired Adeptive, it made employment offers to many of Adeptive's employees, including Defendant Krista Myers, who Qualia hired as Product Manager in December 2020.

44.    Myers worked on Resware until she left Qualia on May 26, 2023, and was included in Qualia's efforts to adapt Resware into a scalable software and to integrate Resware into Qualia's platform, including Qualia Core.

45.    As a condition of her employment with Qualia and her access to Qualia's confidential information necessary to perform her job functions, Defendant Myers was required to sign Qualia's EPIIA, which among other things, prohibited her from using or sharing Qualia's

confidential information in any unauthorized fashion or for any purpose other than Qualia's benefit. *See* **Exhibit 1** hereto.

46.     Pursuant to the EPIIA (and her subsequent Separation Agreement), upon her termination, Myers was also required to return all of Qualia's documents and materials, apparatus, equipment and other physical property, or any reproduction of such property.

47.     As Qualia Product Manager, Defendant Myers had access to Qualia's confidential and trade secret information, including but not limited to the plans for scale-up of Resware; key contacts; actual and potential customers; specifications of future product features; customer experience and feedback; research regarding new software upgrades and features; historic and planned customer pricing; market research and data; product roadmap documentation; and customer facing documentation.

48.     During her employment with Qualia, Defendant Myers became highly disgruntled with her employment. She openly disagreed with Qualia's business plans for what was formerly Resware.

49.     By May 11, 2023, Defendant Myers had secretly interviewed for and accepted a position with Defendant Settlor, a purported start-up digital real estate platform—and the alter ego and instrumentality of Defendant Land Trust—that offers digital title and escrow SaaS solutions, and which seeks to compete with Qualia's products, namely Resware.

**Krista Myers Takes Qualia's Confidential and Trade Secret Information to Settlor and Land Title**

50.     Land Title is a Colorado-based title agency which enjoys a virtual monopoly over the industry within Colorado's borders, and takes the position that no other company should be able to compete in its "hometown."

51.    Land Title now seeks to extend its monopoly to include title production software, and is doing so using its alter ego Settlor and through the illegal actions alleged herein, to harm Qualia and try to monopolize the title production software market in Colorado.  This *status quo*, and Land Title's actions, are detrimental to the industry and Colorado real estate consumers.

52.    Historically, Land Title used its own title production software and, while it obtained a demonstration of Resware, has never been a Resware customer.

53.    Land Title's title production software was not commercially available until shortly after Qualia acquired Adeptive and began integrating Resware into its platform.

54.    In or around 2021, Land Title released its own title production software into the market through its spin-off company and alter ego, Settlor.

55.    As Land Title's President and Settlor's co-founder and current President, Freyer, has said, Settlor's goal is to create a customizable software that is scalable—precisely what Qualia has spent the past four years working to do with Resware.

56.    Though Settlor made Land Title's software available starting in or around 2021, upon information and belief, Settlor's product was not viewed positively such that Land Title— known as a "founder customer" because it purported to establish Settlor as a spin off—was Settlor's largest revenue generating customer, and believed to be one of only a very few.  That all changed after Defendant Myers left Qualia's employ and engaged in the conduct complained of herein.

57.    To assist in building and optimizing Land Title's competing software without investing the time, effort and resources required to do so lawfully, and to target and secure Qualia's actual and potential customers, Land Title and Settlor offered Defendant Myers a position at Settlor in May of 2023.

58.    Defendant Myers received an offer letter for "Settlor" sent to her on Land Title letterhead for the position of "Settlor" Product Manager. Myers accepted this position on or around May 11, 2023, but continued working for Qualia until May 26, 2023.

59.    In the period prior to her separation date, Myers identified and compiled, at minimum, 900 files to take with her to Defendants Settlor and Land Title. She also had amassed a stash of several other files containing Qualia confidential and trade secret data.

60.    Many of these files contained Qualia's confidential and trade secret information, including key contacts; specifications of future product features; market data and research; product roadmap documentation; customer information and customer-facing documentation; pricing data; technical product information; and other confidential and commercially valuable business data. Myers targeted files containing the specific confidential data she could utilize in her new position, and that Defendants Settlor and Land Title could use to profit from as Qualia's competitors.

61.    On May 19, 2023, Defendant Myers signed the Separation Agreement with Qualia. A true and correct copy of the Separation Agreement is attached hereto as **Exhibit 4.** Pursuant to the Separation Agreement, Myers was required to certify that she had and would continue to comply with her EPIIA, had returned all company data and documents, and would maintain the confidentiality of Qualia's valuable competitive information after her employment was terminated:

> **Trade Secrets and Confidential Information/Company Property.**
> Employee reaffirms and agrees to observe and abide by the terms of any confidentiality and/or inventions assignment agreement (collectively "Confidentiality Agreement"), specifically including any provisions therein regarding nondisclosure of the Company's trade secrets and confidential and proprietary information. Employee's signature below constitutes Employee's certification that Employee **has returned all documents and other items provided to Employee by the Company,** developed or obtained by Employee in connection with Employee's employment with the Company, or otherwise belonging to the Company.

62.    Myers falsely certified that she met these obligations, but had, in fact, taken hundreds of files.  In reality, at the moment she signed her Separation Agreement, she knew she was in possession of substantial quantities of Qualia data that she had taken, knowing she was violating Qualia policies (and the law), and which she had stashed on her personal computer media and intended to—and subsequently did—use for her, and Settlor's, and Land Title's benefit.

**Krista Myers and Settlor and Land Title Use Qualia's Confidential and Trade Secret Information For Months And Then Get Caught**

63.    On September 1, 2023, Qualia sent Defendant Myers a letter, copied to Freyer, reminding her of her agreement to keep any confidential information or trade secrets private and to refrain from disclosing that information to Settlor and disparaging Qualia to its customers and the marketplace.  *See* **Exhibit 2**.

> [W]e would like to take this opportunity to remind you of your continuing obligations as set forth in the employee confidential information agreement which you signed when you first joined Qualia. These obligations include, but are not limited to, the obligation to refrain from any unauthorized use or disclosure of any confidential or proprietary information of Qualia. In addition, these obligations are reinforced by the Separation Agreement you signed with Qualia on May 19, 2023.
>
> In addition, we are repeating a message we delivered to you before you left Qualia - Qualia intends to support Resware for the long term and has no plans to sunset the product. Accordingly, we respectfully request that you refrain from telling Qualia employees or Qualia customers that Qualia is not committed to supporting Resware for the long term. Please also avoid any conduct that improperly interferes with our economic relationships with Qualia employees and Qualia customers.

Defendants ignored this letter, despite the fact Myers had already uploaded the stolen Qualia data to Settlor and Land Title's systems and made use of it.  Prior to receiving this letter, and thereafter, Defendants continued to unlawfully possess and use Qualia's trade secret and confidential information and to disparage Qualia to the marketplace.

64.    Since Myers joined Settlor, bringing with her Qualia's confidential and trade secret information, Defendants have unlawfully used Qualia's trade secret information to unjustly enrich

themselves and enable Settlor and Land Title to develop and optimize a customizable, title production software and targeted Qualia's customers without expending the time and resources necessary to do so lawfully.  Through its unlawful competition, Settlor and Land Title have successfully diverted at least three of Qualia's customers to date away from Resware and to Settlor and Land Title's competing product, causing millions of dollars in damages to Qualia.  Settlor and Land Title have also unjustly enriched themselves through the unfair competitive advantage they gained through the intentional acts complained of herein.

## Qualia's December 1, 2023 Letter To Defendants – In Response to Which Defendant Myers Immediately Destroys Evidence of Her Usage

65.     By November 2023, Qualia continued to get reports that Myers was defaming Qualia to its core customers.

66.     By the end of November, Qualia performed a backup of the Qualia user profile on its systems belonging to Myers while she was a Qualia employee.

67.     The live file backup of Myers's computer revealed that, while employed by Qualia, she frequently used a personal Google account, simultaneously with her corporate Google account. Google allows users to sign into multiple accounts at once and allows users to switch back and forth between them.  The forensic evidence demonstrated that Myers shifted between accounts to access Qualia information and then upload it onto her personal Google account.

68.     As noted, on December 1, 2023, Qualia again reached out to Defendants regarding its concerns about its confidential information and what it had learned through forensic review of its systems.  The letter specifically included the following admonition:

> Until further notice, Ms. Myers and Settlor must preserve, and not delete, and retain all evidence relating to Qualia Labs' including, but not limited to, all communications (including mobile messaging apps like Signal and WhatsApp), text messages, documents, tangible things, and electronic data in your possession, custody, or control, or the possession, custody, or control of your agents. For the

purposes of this letter, the term "electronic data" includes, but is not limited to, text files (including word processing documents), spread sheets, e-mail files and information concerning e-mail (including logs of e-mail history and usage, header information and "deleted" files), internet history files and preferences, graphical image files (including ".JPG, .GIF, .BMP and TIFF" files), data bases, calendar and scheduling information, computer system activity logs, instant message text and all related information and/or data related, and all file fragments and backup files containing the above electronic data.

69.     Within a few hours of receiving the December 1, 2023 letter, Defendant Myers deleted off of Settlor and Land Title's systems the many Qualia files she had uploaded months earlier and repeatedly accessed and used for Settlor's and Land Title's benefit.

70.     It is also clear that Defendant Myers maintains substantial quantities of Qualia data on her personal computer devices, including an Apple computer and an iPad.  Qualia is informed and believes that Defendant Myers's personal devices also contain evidence that, since departing Qualia's employ, she accessed and used the data in the stolen files stored on her personal devices.

71.     To date, and despite Qualia's repeated requests, Defendants have not provided a detailed accounting of the Qualia confidential and trade secret information stolen by Defendant Myers, and they have not returned any of it.  Nor have they explained the extent to which it was utilized, disseminated, and copied over the many months it was on Settlor's and Land Title's computer systems and stashed on Myers's personal devices.

72.     Putting all of this in perspective, Defendant Myers was a disgruntled and sophisticated product leader in Qualia's Resware team.  In the final stages of her employment for Qualia, she sought out a much smaller new startup competitor; procured a C-suite level executive job for herself several levels above the Manager-level job she held at Qualia; stole mass amounts of valuable Qualia data that would be competitively valuable to her at her new job; falsely certified upon her exit that she was not in possession of any Qualia data; immediately started her employment with competitor Settlor; uploaded substantial numbers of Qualia files onto Settlor and

Land Title's computer systems, and kept a stashed library of additional Qualia files on her personal devices; spent months using the stolen Qualia data to unfairly compete with Qualia while disparaging and defaming Qualia to its customers; ignored Qualia's September 1, 2023 letter expressing concerns about its IP and trade disparagement; and, when Qualia discovered Defendants' IP theft and offered them a chance to voluntarily rectify their actions by way of the December 1, 2023 letter, immediately deleted what she thought was all evidence of what she had uploaded onto Settlor's and Land Title's systems that she had repeatedly used and accessed for Settlor's and Land Title's benefit. Qualia is informed and believes that, during this entire period, Defendant Myers has been working to quickly, cheaply, and illegally reconstitute and optimize for Settlor and Land Title the product that Qualia paid tens of millions of dollars to purchase from Defendant Myers's prior company, while simultaneously disparaging Qualia to its customers and trying to convince them to sever their ties with Qualia and become Settlor customers. To date, Settlor and Land Title have not disciplined Defendant Myers in any fashion, and Defendants continue their illegal conduct in a "business as usual" fashion.

73.     Judicial intervention is required to hold Defendants responsible for their theft and usage of Qualia's documents and critical trade secrets, for their ongoing unfair acts designed to harm Qualia's business efforts, and to prevent Settlor and Land Title from continuing their IP development and sale of competing products and services through wrongful, improper, and illegal means that has and continues to cause irreparable harm.

**FIRST CAUSE OF ACTION**
**Misappropriation of Trade Secrets Under the Defend Trade Secrets Act ("DTSA")**
**Alleged Against All Defendants**

74.     Qualia hereby realleges and incorporates by reference each and every allegation set forth in paragraphs 1 through 73, inclusive as though fully set forth herein.

75.    Qualia owns, develops, and possesses information, documents, and data containing trade secrets, including, but not limited to, financial, business, and economic information client contact information, pricing data and technical product information as alleged herein.

76.    Qualia has taken reasonable measures to keep such information secret and confidential, including, but not limited to, having employees sign contracts agreeing not to take or misuse their trade secrets and employing computer systems to prevent and detect theft of trade secrets.

77.    This confidential trade secret information derives independent economic value from not being generally known to, and not being readily ascertainable through proper means by, another person who could obtain economic value from the disclosure or use of the information.

78.    Defendants misappropriated Qualia's confidential trade secret information in the improper and unlawful manner as alleged herein.

79.    Defendants' wrongful conduct in misappropriating Qualia's trade secret information, unless and until enjoined and restrained by order of this Court, will cause great and irreparable harm to Qualia.  Qualia is threatened with losing its intellectual property as well as current and potential business.  Qualia will continue to suffer irreparable injury that cannot be adequately remedied at law unless Defendants are permanently enjoined from engaging in any further such acts of misappropriation.

80.    As a proximate result of Defendants' conduct, Qualia has suffered, and will continue to suffer, general and special damages in an amount to be proven at trial, including but not limited to lost profits damages in excess of $2 million dollars.  Defendants have also been unjustly enriched in an amount to be determined at trial, and Qualia seeks compensation for all damages proximately caused by Defendants' conduct.

81.     Each of the acts of misappropriation was done willfully and maliciously by Defendants with the deliberate intent to injure Qualia's business and improve their own business and for financial gain, thereby entitling Qualia to exemplary damages and/or attorneys' fees to be proven at trial.

**SECOND CAUSE OF ACTION**
**Misappropriation of Trade Secrets Under the Colorado Uniform Trade Secrets Act**
**("CUTSA")**
**Alleged Against All Defendants**

82.     Qualia hereby realleges and incorporates by reference each and every allegation set forth in paragraphs 1 through 73, inclusive as though fully set forth herein.

83.     Qualia owns, develops, and possesses information, documents, and data containing trade secrets, including, but not limited to, financial, business, and economic information, client contact information, pricing data and technical product information as alleged herein.

84.     Qualia has taken reasonable measures to keep such information secret and confidential, including, but not limited to, having employees sign contracts agreeing not to take or misuse their trade secrets and employing computer systems to prevent and detect theft of trade secrets.

85.     This confidential trade secret information derives independent economic value from not being generally known to, and not being readily ascertainable through proper means by, another person who could obtain economic value from the disclosure or use of the information. Accordingly, the above-described information constitutes "trade secrets" under Colorado's Uniform Trade Secrets Act, Colorado Revised Statute Section 7-74-101 *et. seq*.

86.     Defendant Myers was and continues to be under a duty both to keep Qualia's confidential trade secret information secret, and not to use or disclose such information other than for the benefit of Qualia.

87.     In taking this information from Qualia, Defendant Myers knew, or should have known, that she acquired such information under circumstances giving rise to a breach of a duty to maintain its secrecy or limit its use, and Defendants Settlor and Land Title knew, or should have known, that they had derived such information from or through a person who has such a duty and/or through improper means.

88.     Defendants have taken and retained Qualia's trade secret information in unauthorized fashion.  Further, on information and belief, Defendant Myers has used and continues to use this information to benefit herself, her new employer Defendant Settlor, its alter ego Defendant Land Title, and/or other persons.

89.     Defendants did not obtain the trade secret information described above from generally available information or through their own independent research and efforts.

90.     The actions of Defendants constitute willful misappropriation of Qualia's trade secrets under Colorado Revised Statute Section 7-74-101 *et seq*.

91.     Defendants' wrongful conduct in misappropriating Qualia's trade secret information, unless and until enjoined and restrained by order of this Court, will cause great and irreparable harm to Qualia.  Qualia is threatened with losing its intellectual property as well as current and potential business.  Qualia will continue to suffer irreparable injury that cannot be adequately remedied at law unless Defendants are preliminarily and permanently enjoined from engaging in any further acts of misappropriation.

92.     As a proximate result of Defendants' conduct, Qualia has suffered, and will continue to suffer, general and special damages in an amount to be proven at trial, including but not limited to lost profits damages in excess of $2 million dollars.  Defendants have also been

unjustly enriched in an amount to be determined at trial, and Qualia seeks compensation for all damages proximately caused by Defendants' conduct.

93.    Each of the acts of misappropriation was done willfully and maliciously by Defendants with the deliberate intent to injure Qualia's business, to improve their own business, and for financial gain, thereby entitling Qualia to exemplary damages and/or attorneys' fees to be proven at trial pursuant to Colorado Revised Statute Section 7-74-104.

### THIRD CAUSE OF ACTION
### Breach of Written Contract – EPIIA
### Alleged Against Defendant Myers

94.    Qualia hereby realleges and incorporates by reference each and every allegation set forth in paragraphs 1 through 73, inclusive, as though fully set forth herein.

95.    Pursuant to the terms of the EPIIA, Defendant Myers agreed to "keep in confidence and trust" and not use or disclose to any third party Qualia's confidential and proprietary information "during [her] employment with [Qualia] and after its termination."  Under the terms of the EPIIA, Defendant Myers also agreed to "not remove any [Qualia] Documents and Materials from the business premises of [Qualia] or deliver any [Qualia] Documents and Materials to any person or entity outside [Qualia]."

96.    Defendant Myers has unjustifiably, intentionally, and inexcusably breached her obligations under the EPIIA, and under Colorado law, by misappropriating Qualia's confidential information, trade secret information, and other information concerning the business, operations or plans of Qualia, in violation of her agreement with Qualia.

97.    Pursuant to the EPIIA, Defendant Myers was and is obligated to, among other things, not take or misuse Qualia's confidential and trade secret information upon termination from Qualia.  Further, "immediately upon the termination of [her] employment," Defendant Myers was

and is obligated to "return all [Qualia] Documents and Materials, apparatus, equipment and other physical property, or any reproduction of such property."

98.    Defendant Myers has further breached the EPIIA by failing to return all Qualia stolen data and documents, and sharing and utilizing confidential information and Qualia's company documents and materials with Defendants Settlor and Land Title, competitors of Qualia.

99.    Qualia performed all obligations required of it under the terms of the EPIIA.

100.    As a proximate result of Defendant Myers's breach of contract, Qualia has suffered, and will continue to suffer, general and special damages in an amount to be proven at trial, including but not limited to loss profits damages in excess of $2 million dollars.  Defendants have also been unjustly enriched in an amount to be determined at trial, and Qualia seeks compensation for all damages proximately caused by these breaches.

101.    Defendants' misconduct described above is ongoing and Qualia has suffered and will continue to suffer irreparable harm.  Accordingly, Qualia is entitled to preliminary and permanent injunctive relief enjoining Defendant Myers, and individuals and entities acting with her, from engaging in further misconduct set forth above.

### FOURTH CAUSE OF ACTION
### Breach of Contract – Separation Agreement
### Alleged Against Defendant Myers

102.    Qualia hereby realleges and incorporates by reference each and every allegation set forth in paragraphs 1 through 73 inclusive, as though fully set forth herein.

103.    Under the Separation Agreement, Defendant Myers "reaffirm[ed] and agree[d] to observe and abide by the terms" of the EPIIA.  The Separation Agreement specifically incorporates the EPIIA, which requires Defendant Myers to "keep in confidence and trust" and not misuse Qualia's confidential information "during [her] employment with [Qualia] and after its termination."

104.    Under the Separation Agreement, Defendant Myers also certified that she "returned all documents and other items provided to [her] by [Qualia], developed or obtained by [her] in connection with [her] employment with [Qualia], or otherwise belonging to [Qualia]."

105.    Defendant Myers unjustifiably and inexcusably breached her obligations under the Separation Agreement by misappropriating Qualia's confidential and valuable information to share with Defendants Settlor and Land Trust.

106.    Qualia has performed all obligations required of it under the terms of the Separation Agreement.

107.    As a proximate result of Defendant Myers's breach of contract, Qualia has suffered, and will continue to suffer, general and special damages in an amount to be proven at trial, including but not limited to loss profits damages in excess of $2 million dollars.  Defendants have also been unjustly enriched in an amount to be determined at trial, and Qualia seeks compensation for all damages proximately caused by these breaches.

108.    Under the terms of the Separation Agreement, Defendant Myers is also responsible for all costs, attorneys' fees, and any and all damages incurred by Qualia in enforcing Defendant Myers's obligations under the Separation Agreement or the EPIIA.  Qualia is entitled to recovery of those costs and fees in an amount to be proven at trial.

109.    Defendants' misconduct described above is ongoing and Qualia has suffered and will continue to suffer irreparable harm.  Accordingly, Qualia is entitled to preliminary and permanent injunctive relief enjoining Defendant Myers, and individuals and entities acting with her, from engaging in further misconduct set forth above.

**FIFTH CAUSE OF ACTION**
**Intentional Interference with Contract**
**Alleged Against Defendants Settlor and Land Title**

110.     Qualia hereby realleges and incorporates by reference each and every allegation set forth in paragraphs 1 through 73 inclusive, as though fully set forth herein.

111.     Qualia entered into valid and enforceable contracts with Defendant Myers, relating to its trade secrets, confidential business information, and any other information concerning its business, operations or plans.

112.     On information and belief, Defendant Settlor and Defendant Land Title are and at all times have been aware of Qualia's contracts with Defendant Myers, including the EPIIA and the Separation Agreement.

113.     Defendant Settlor's and Land Title's conduct described herein, including but not limited to their failure to take reasonable measures to ensure that Myers was not in possession of confidential and proprietary Qualia information, was intended to and did induce a breach of the EPIIA and Separation Agreement.

114.     In allowing her retention of Qualia documents, and misuse of Qualia's confidential and trade secret information as wrongfully obtained by Defendant Myers, Defendants Settlor and Land Title have intentionally interfered with the contracts between Qualia and Defendant Myers and/or prevented Defendant Myers's performance under her contracts with Qualia.

115.     Defendants Settlor and Land Title intended to disrupt Qualia's contractual agreements with Defendant Myers, and knew that such disruption was certain or substantially certain to occur.

116.     The above-described acts were done willfully and maliciously, with the deliberate intent to injure Qualia and, on information and belief, for Defendants' financial gain.

117.    Qualia was harmed by Defendant Settlor's and Defendant Land Title's conduct in an amount to be proven at trial, and such conduct was a substantial factor in causing Qualia's harm, including damage to its relationships, goodwill, and reputation.

118.    Defendant Settlor's and Land Title's misconduct described above is ongoing and Qualia has suffered and will continue to suffer irreparable harm.  Accordingly, Qualia is entitled to preliminary and permanent injunctive relief enjoining Defendants, and individuals and entities acting with them, from engaging in further misconduct set forth above.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff QUALIA LABS, INC. prays for relief as follows:

1.    Judgment in Plaintiff's favor against Defendants on all causes of action alleged herein;

2.    For preliminary, and permanent injunctive relief;

3.    For compensatory and unjust enrichment damages in an amount to be proven at trial;

4.    For exemplary and punitive damages for Defendants' willful and malicious acts;

5.    For attorneys' fees and costs incurred by virtue of this action;

6.    For pre-judgment and post-judgment interest at the maximum rate allowed by law; and

7.    For such other and further relief as the Court may deem proper.

## JURY TRIAL DEMANDED

Plaintiff requests trial by jury on all issues so triable.

Dated:  November 21, 2024

By: /s/ Emily Brait
Bradford K. Newman
**BAKER & McKENZIE LLP**
600 Hansen Way
Palo Alto, CA 94304-1044
Telephone:  +1 650 856 2400
Facsimile:   +1 650 856 9299

Jacob M. Kaplan
Elizabeth Roper (*Admission Forthcoming*)
Emily Brait
**BAKER & McKENZIE LLP**
452 Fifth Avenue
New York, NY 10018
United States
Tel:  +1 212 626 4100
Fax: +1 212 310 1600

Paul J.  Lopach
Timothy Reynolds
Benjamin J. Hogan
**BRYAN CAVE LEIGHTON PAISNER LLP**
1700 Lincoln Street, Suite 4100
Denver, CO 80203-4541
Telephone:   +1 303 861 7000
Facsimile:    +1 303 866 0200

Attorneys for Plaintiff
QUALIA LABS, INC.